[No. S105078. Feb. 9, 2004.]

JERRY RICHMOND et al., Plaintiffs and Appellants, v.
SHASTA COMMUNITY SERVICES DISTRICT, Defendant and
Respondent.

414

## Counsel

Law Offices of Walter P. McNeill and Walter P. McNeill for Plaintiffs and Appellants.

Trevor A. Grimm, Jonathan M. Coupal and Timothy A. Bittle for Howard Jarvis Taxpayers Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Sheppard, Mullin, Richter & Hampton and David P. Lanferman for California Building Industry Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Law Office of David L. Edwards, David L. Edwards; Colantuono, Levin & Rozell, Michael G. Colantuono and Sandra J. Levin for Defendant and Respondent.

Betsy Strauss, City Attorney (Rohnert Park) for 84 California Cities, the Association of California Water Agencies and the California State Association of Counties as Amici Curiae on behalf of Defendant and Respondent.

Law Office of William D. Ross and William D. Ross for California Fire Chiefs Association as Amicus Curiae on behalf of Defendant and Respondent.

**O**PINION

**KENNARD, J.**—In November 1996, California voters adopted Proposition 218, the Right to Vote on Taxes Act, which added articles XIII C and XIII D to the California Constitution. (See *Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24 Cal.4th 830, 835 [102 Cal.Rptr.2d 719, 14 P.3d 930].) Article XIII D of the state Constitution (hereafter article XIII D) specifies various restrictions and requirements for assessments, fees, and charges that local governments impose on real property ·or on persons as an incident of property ownership. Here, the main issue is whether a charge that a local water district imposed as a condition of making a new connection to the water system, and that the district used to finance capital improvements to the water system, is subject to the restrictions of article XIII D. Other questions presented are whether article XIII D prohibits a local water district from continuing to include in the new connection fees a fire suppression charge, the proceeds of which are used to purchase firefighting and emergency medical equipment for the district's volunteer fire department, and whether an ordinance imposing a water connection fee may be amended by a resolution.

On these questions, we conclude: (1) a capacity charge imposed as a condition for making a new connection to a water system, the proceeds of which are used to finance capital improvements, is not an assessment within the meaning of article XIII D, and thus it is not subject to article XIII D's restrictions on assessments; (2) a fire suppression fee imposed as a condition for making a new connection to a water system, the proceeds of which are used to purchase firefighting and emergency medical equipment, is not a property-related fee or charge under article XIII D, and thus it is not subject to article XIII D's prohibition against property-related fees and charges for general governmental services; and (3) an ordinance enacted by a community services district to impose a water connection fee may be amended by a resolution. Because these conclusions are consistent with the trial court's judgment but inconsistent with part of the Court of Appeal's opinion, we will reverse that court's judgment with directions to affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

Because neither party petitioned the Court of Appeal for a rehearing, we take the facts largely from that court's opinion. (See Cal. Rules of Court, rule 28(c)(2).)

Defendant Shasta Community Services District (the District) is a local public entity organized under the community services district law (Gov. Code, § 61000 et seq.). It operates a water system for residential and commercial users and a volunteer fire department that provides both fire suppression and emergency medical services. In February 1994, the District

adopted an ordinance (No. 1-94) establishing a "standard connection fee" of $2,000, plus the cost of a water meter, for new water service connections. According to the ordinance, this fee included a capacity charge[1] of $600 for future improvements to the water system and a fire suppression charge of $400. The ordinance did not expressly allocate the remaining $1,000, but one may infer that it covered the cost of installing the water service connection because the ordinance also provided that if the water main was not on the same side of the street or highway as the property to be served, "the District will charge the actual cost of the connection to the extent such cost exceed [sic] the sum of $1,000."

In November 1997, the District adopted a resolution (No. 10-97) to amend this ordinance. According to the resolution, applicants for new water service connections would be required to pay: (1) a "standard connection fee"; (2) the actual cost of a water meter; and (3) if the property owner chose to have the District install the service connection, the "actual cost of the materials, labor, and overhead" for installing the "entire service connection including the meter, line setter, meter box, appurtenant equipment, and mainline extension, if any." The "standard connection fee" consisted of a $3,176 capacity charge for capital improvements to the water system and a $400 fire suppression charge. The resolution stated that the $3,176 capacity charge was "based upon estimated project costs of $762,300 for future improvements assigned to the new development of 240 future connections which equals $3,176 per connection."

In March 1998, plaintiffs Jerry Richmond, Linda Panich, Hank Edelstein, and Victoria Edelstein, both individually and doing business as a joint venture, brought this action to test the validity of the resolution increasing the fees for new connections. (Code Civ. Proc., § 860; Gov. Code, §§ 66013, 66022.) They alleged that they owned real property within the District and also within an area proposed for annexation into the District. They challenged the resolution on many grounds, only three of which are relevant here: (1) The resolution imposed an assessment within the meaning of article XIII D, but the District had not satisfied the constitutional requirements for imposing an assessment; (2) the $400 fire suppression charge was a "fee" or "charge" within the meaning of article XIII D, and it violated article XIII D's prohibition against fees or charges for general governmental services; and (3) the 1994 ordinance could be amended only by another ordinance, not by a mere resolution. Plaintiffs requested a declaratory judgment that the resolution was void and a permanent injunction restraining the District from enforcing it.

---

[1] The Government Code defines a "capacity charge" as "a charge for facilities in existence at the time a charge is imposed or charges for new facilities to be constructed in the future that are of benefit to the person or property being charged." (Gov. Code, § 66013, subd. (b)(3).)

The action was tried to the court without a jury. At the trial, the District presented evidence showing, among other things, that the capital improvements to be funded by the $3,176 capacity charge, including a new 500,000-gallon storage tank, would both remedy existing deficiencies in the water system and expand the system's ability to provide service to new customers through new connections. The $3,176 charge was calculated by allocating 50 percent of the cost of the improvements to new connections and 50 percent to existing connections. Water customers throughout the district would benefit from the improvements, but customers in certain higher-elevation areas would receive somewhat less benefit than other customers. After considering the evidence, the superior court granted judgment for the District. The court concluded: (1) The connection fee imposed by resolution No. 10-97 is not a special assessment but a development fee exempt from article XIII D; (2) the fire suppression charge is merely the continuation of a fee imposed before article XIII D was enacted; and (3) the connection fee could legally be adopted by a resolution (enactment of an ordinance was not required).

On plaintiffs' appeal, the Court of Appeal affirmed the judgment, except as to the fire suppression charge. The court reasoned that the District's connection fee was not an assessment within the meaning of article XIII D because that constitutional provision by implication defines an assessment as a charge imposed on specific identified parcels, whereas the connection fee was not imposed on identified parcels. Because the connection fee was imposed only when a property owner requested a new service connection, the specific properties for which connections would be sought could not be identified (although the number of such requests could be estimated), and thus the connection charge could not be characterized as an assessment. The Court of Appeal also concluded that the connection fee, because it was incurred only when the owner voluntarily requested a new service connection, was properly characterized as a development fee, and as such it was exempt from the requirements of article XIII D.

With respect to the fire suppression charge, however, the Court of Appeal accepted plaintiff's argument that it was a fee for general governmental services prohibited by section 6, subdivision (b)(5), of article XIII D. The Court of Appeal rejected the District's argument that this provision did not apply to fees authorized by laws enacted before article XIII D became effective, but only to fees that were newly enacted or increased thereafter.

Finally, the Court of Appeal concluded that the District could validly use a resolution to amend an ordinance.

## II. The Capacity Charge

■ To determine whether the District's $3,176 capacity charge, imposed only on applicants for new service connections, violates article XIII D's restrictions on assessments, we must interpret our state Constitution. "The principles of constitutional interpretation are similar to those governing statutory construction." (*Thompson v. Department of Corrections* (2001) 25 Cal.4th 117, 122 [105 Cal.Rptr.2d 46, 18 P.3d 1198].) The aim of constitutional interpretation is to determine and effectuate the intent of those who enacted the constitutional provision at issue. (*Ibid.*) To determine that intent, we begin by examining the constitutional text, giving the words their ordinary meanings. (*Ibid.*; accord, *Leone v. Medical Board* (2000) 22 Cal.4th 660, 665 [94 Cal.Rptr.2d 61, 995 P.2d 191].)

Section 2 of article XIII D defines an "assessment" as "any levy or charge upon real property . . . for a special benefit conferred upon the real property . . . ." (Art. XIII D, § 2, subd. (b).) It defines "special benefit" as "a particular and distinct benefit over and above general benefits conferred on real property located in the district or to the public at large . . . ." (*Id.*, § 2, subd. (i).)

Section 4 of article XIII D establishes procedures and requirements for assessments. A local public agency may not impose an assessment, as defined in article XIII D, unless: (1) the agency identifies "all parcels which will have a special benefit conferred upon them and upon which an assessment will be imposed" (art. XIII D, § 4, subd. (a)); (2) the agency obtains an engineer's report that supports the assessment (*id.*, § 4, subd. (b)); (3) the assessment does not exceed the reasonable cost of the proportional special benefit conferred on the affected parcel (*id.*, § 4, subds. (a) & (f)); and (4) after giving notice to affected property owners and holding a public hearing, the agency does not receive a majority protest based on ballots "weighted according to the proportional financial obligation of the affected property" (*id.*, § 4, subds. (c)–(e)).

To determine what constitutes an assessment under article XIII D, it is necessary to consider not only article XIII D's definition of an assessment, but also the requirements and procedures that article XIII D imposes on assessments. Article XIII D requires that an agency imposing an assessment identify "all parcels which *will* have a special benefit conferred upon them and upon which an assessment *will* be imposed." (Art. XIII D, § 4, subd. (a), italics added.) The agency then must give written notice of the proposed assessment to the owners of these identified parcels (*id.*, § 4, subd. (c)) and provide an opportunity for a protest using ballots "weighted according to the proportional financial obligation of the affected property" (*id.*, § 4, subd. (e)).

Because the capacity charge is imposed only on property owners who apply for a new service connection, the District cannot identify the parcels upon which the capacity charge will be imposed. Here, the District *estimated* that there would be 240 new connection applications, but the District did not and could not *identify* the specific parcels for which new connection applications would be made. At most, the District can identify the parcels within its boundaries on which the capacity charge *would* be imposed *if* the owners applied for a service connection. But the matter is more complex, because many existing undeveloped parcels would likely be subdivided into an indeterminable number of smaller parcels, for each of which a connection might be requested, thus making it impossible to now determine "the proportional financial obligation of the affected property." And even this understates the problem, because owners of property outside the District's boundaries may seek service connections by applying for annexation of their property into the District. Therefore, it is impossible for the District to comply with article XIII D's requirement that the agency identify the parcels on which the assessment will be imposed and provide an opportunity for a majority protest weighted according to the proportional financial obligation of the affected property.

■ We agree with the Court of Appeal that the proper conclusion to be drawn from this impossibility of compliance is that an assessment within the meaning of article XIII D must not only confer a special benefit on real property, but also be imposed on identifiable parcels of real property. Because the District does not impose the capacity charge on identifiable parcels, but only on individuals who request a new service connection, the capacity charge is not an assessment within the meaning of article XIII D.

This construction is consistent with settled rules of constitutional interpretation. "Courts construe constitutional phrases liberally and practically; where possible they avoid a literalism that effects absurd, arbitrary, or unintended results." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 327 [182 Cal.Rptr. 506, 644 P.2d 192]; see also *California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1147 [43 Cal.Rptr.2d 693, 899 P.2d 79] ["a practical construction is preferred"].) Construing article XIII D's definition of assessment as applying only to charges imposed on identifiable parcels avoids the probably unintended result of prohibiting local water districts from imposing capacity charges, no matter how modest or reasonable, for new connections because of the inherent impossibility of identifying in advance the parcels for which new connections would later be requested.

This construction is also consistent with article XIII D's definition of an assessment as a "levy or charge *upon real property* . . . ." (Art. XIII D, § 2,

subd. (b), italics added.)[2] The District does not impose the capacity charge on real property as such, but on individuals who apply for new service connections. It is the applicant who must pay, and the District may not impose a lien or otherwise have recourse to the property to compel payment. Rather, the District simply does not initiate water service until the charge is paid. A charge that operates in this way cannot be described as a charge upon real property, within the meaning of article XIII D.

■ Finally, this construction is consistent with the aim of Proposition 218 to enhance taxpayer consent. Here, the District proposed to divide the costs of new capital improvements between users receiving service through existing connections and users applying for new connections. This case concerns only imposition of costs on new connections. Presumably, any costs imposed on customers receiving service through existing connections would be subject to article XIII D's voter approval requirements, and thus their consent. Customers who apply for new connections give consent by the act of applying. Moreover, water connection fees are already subject to significant constraints under Government Code section 66013.[3]

---

[2] In this regard, it may be instructive to compare article XIII D's definition of an assessment as a "levy or charge upon real property" (*id.,* § 2, subd. (b)) with its definition of a fee or charge as a "levy . . . upon a parcel or upon a person as an incident of property ownership . . ." (*id.,* § 2, subd. (e)). Although a property-related fee or charge may be imposed either on the property itself or upon the owner as an incident of ownership, a levy must be imposed on the property itself to qualify as an assessment under article XIII D.

[3] Government Code section 66013 provides:

"(a) Notwithstanding any other provision of law, when a local agency imposes fees for water connections or sewer connections, or imposes capacity charges, those fees or charges shall not exceed the estimated reasonable cost of providing the service for which the fee or charge is imposed, unless a question regarding the amount of the fee or charge imposed in excess of the estimated reasonable cost of providing the services or materials is submitted to, and approved by, a popular vote of two-thirds of those electors voting on the issue.

"(b) As used in this section:

"(1) 'Sewer connection' means the connection of a structure or project to a public sewer system.

"(2) 'Water connection' means the connection of a structure or project to a public water system, as defined in subdivision (f) of Section 116275 of the Health and Safety Code.

"(3) 'Capacity charge' means a charge for facilities in existence at the time a charge is imposed or charges for new facilities to be constructed in the future that are of benefit to the person or property being charged.

"(4) 'Local agency' means a local agency as defined in Section 66000.

"(5) 'Fee' means a fee for the physical facilities necessary to make a water connection or sewer connection, including, but not limited to, meters, meter boxes, and pipelines from the structure or project to a water distribution line or sewer main, and that does not exceed the estimated reasonable cost of labor and materials for installation of those facilities.

"(c) A local agency receiving payment of a charge as specified in paragraph (3) of subdivision (b) shall deposit it in a separate capital facilities fund with other charges received, and account for the charges in a manner to avoid any commingling with other moneys of the

Plaintiffs rely on this court's decision in *San Marcos Water Dist. v. San Marcos Unified School Dist.* (1986) 42 Cal.3d 154 [228 Cal.Rptr. 47, 720 P.2d 935] (*San Marcos*). The issue there was whether a provision of the state Constitution exempting public entities from payment of property taxes (Cal. Const., art. XIII, § 3, subd. (b)) applied to a local water district's capacity fee, used to fund capital improvements to the water system. The constitutional property tax exemption for public entities had been construed to include

local agency, except for investments, and shall expend those charges solely for the purposes for which the charges were collected. Any interest income earned from the investment of moneys in the capital facilities fund shall be deposited in that fund.

"(d) For a fund established pursuant to subdivision (c), a local agency shall make available to the public, within 180 days after the last day of each fiscal year, the following information for that fiscal year:

"(1) A description of the charges deposited in the fund.

"(2) The beginning and ending balance of the fund and the interest earned from investment of moneys in the fund.

"(3) The amount of charges collected in that fiscal year.

"(4) An identification of all of the following:

"(A) Each public improvement on which charges were expended and the amount of the expenditure for each improvement, including the percentage of the total cost of the public improvement that was funded with those charges if more than one source of funding was used.

"(B) Each public improvement on which charges were expended that was completed during that fiscal year.

"(C) Each public improvement that is anticipated to be undertaken in the following fiscal year.

"(5) A description of each interfund transfer or loan made from the capital facilities fund. The information provided, in the case of an interfund transfer, shall identify the public improvements on which the transferred moneys are, or will be, expended. The information, in the case of an interfund loan, shall include the date on which the loan will be repaid, and the rate of interest that the fund will receive on the loan.

"(e) The information required pursuant to subdivision (d) may be included in the local agency's annual financial report.

"(f) The provisions of subdivisions (c) and (d) shall not apply to any of the following:

"(1) Moneys received to construct public facilities pursuant to a contract between a local agency and a person or entity, including, but not limited to, a reimbursement agreement pursuant to Section 66003.

"(2) Charges that are used to pay existing debt service or which are subject to a contract with a trustee for bondholders that requires a different accounting of the charges, or charges that are used to reimburse the local agency or to reimburse a person or entity who advanced funds under a reimbursement agreement or contract for facilities in existence at the time the charges are collected.

"(3) Charges collected on or before December 31, 1998.

"(g) Any judicial action or proceeding to attack, review, set aside, void, or annul the ordinance, resolution, or motion imposing a fee or capacity charge subject to this section shall be brought pursuant to Section 66022.

"(h) Fees and charges subject to this section are not subject to the provisions of Chapter 5 (commencing with Section 66000), but are subject to the provisions of Sections 66016, 66022, and 66023.

"(i) The provisions of subdivisions (c) and (d) shall only apply to capacity charges levied pursuant to this section."

special assessments, but not user fees, and thus the issue presented to this court was whether the capacity charge was more properly characterized as a special assessment or as a user fee for purposes of this constitutional provision. We concluded that a capacity charge was a hybrid, in the sense that it had some characteristics of a user fee and some characteristics of an assessment. (*San Marcos, supra,* at p. 163.) We concluded also, however, that the fee should be considered an assessment for purposes of the public entity property tax exemption. We established a bright-line rule that "a fee aimed at assisting a utility district to defray costs of capital improvements will be deemed a special assessment from which other public entities are exempt." (*Id.* at pp. 164–165.)[4]

*San Marcos, supra,* 42 Cal.3d 154, is not on point here. We were not there construing the term "assessment" as used in article XIII D; instead, we were construing the constitutional provision exempting public entities from property taxes (Cal. Const., art. XIII, § 3, subd. (b)), a provision in which the term "assessment" does not appear. In deciding what constituted an assessment in *San Marcos,* we sought to determine and effectuate the constitutional purpose for exempting public entities from property taxes, a purpose that plays no role in interpreting the provisions of article XIII D that are at issue here. The characteristic that we found determinative for identifying assessments in *San Marcos*—that the proceeds of the fee were used for capital improvements— forms no part of article XIII D's definition of assessments. For each of these reasons, we agree with the Court of Appeal that *San Marcos* is not helpful, much less controlling, in this strikingly different context. (See *Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689] ["Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered."]; *People v. Woodhead* (1987) 43 Cal.3d 1002, 1008 [239 Cal.Rptr. 656, 741 P.2d 154] [a word may have different legal meanings in different contexts]; *In re Marriage of Buol* (1985) 39 Cal.3d 751, 757, fn. 6 [218 Cal.Rptr. 31, 705 P.2d 354] [same].)

■ Plaintiffs invoke the rule that when a term has been given a particular meaning by a judicial decision, it should be presumed to have the same meaning in later-enacted statutes or constitutional provisions. (See *People v. Hurtado* (2002) 28 Cal.4th 1179, 1188–1189 [124 Cal.Rptr.2d 186, 52 P.3d 116]; *Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 19 [56 Cal.Rptr.2d 706, 923

---

[4] In response to our *San Marcos* decision, the Legislature granted local water districts authority to impose capacity charges on other public entities, thereby removing the public entity exemption. (See Gov. Code, §§ 54999–54999.6; *Utility Cost Management v. Indian Wells Valley Water Dist.* (2001) 26 Cal.4th 1185, 1189 [114 Cal.Rptr.2d 459, 36 P.3d 2]; *City of Marina v. Board of Trustees* (2003) 109 Cal.App.4th 1179, 1182–1183 [135 Cal.Rptr.2d 815]; *Utility Cost Management v. East Bay Mun. Utility Dist.* (2000) 79 Cal.App.4th 1242, 1246–1247 [94 Cal.Rptr.2d 777].)

P.2d 1].) Plaintiffs argue that *San Marcos, supra,* 42 Cal.3d 154, gave the term "assessment" a precise legal meaning as applying to capacity charges used to fund capital improvements, and therefore the term "assessment" in article XIII D, enacted after *San Marcos,* must be construed to have the same meaning. But the rule that plaintiffs invoke does not apply when, as here, the statute or constitutional provision contains its own definition of the term at issue: "If the Legislature has ·provided an express definition of a term, that definition ordinarily is binding on the courts." (*Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063 [103 Cal.Rptr.2d 751, 16 P.3d 166].)

■ Here, article XIII D provides both an express definition of assessment and an implied qualification of that definition through the requirement that the agency identify the specific parcels on which the assessment will be imposed.

■ Plaintiffs next rely on the definition of assessment in Government Code section 53750, part of the Proposition 218 Omnibus Implementation Act (Gov. Code, §§ 53750–53753) that the Legislature enacted in 1997. (Stats. 1997, ch. 38, § 5.) Government Code section 53750 states that "[f]or purposes of Article XIII C and Article XIII D of the California Constitution" an "assessment" means "any levy or charge by an agency upon real property that is based upon the special benefit conferred upon the real property by a public improvement or service, that is imposed to pay the capital cost of the public improvement, the maintenance and operation expenses of the public improvement, or the cost of the service being provided." (Gov. Code, § 53750, subd. (b).) As plaintiffs point out, this definition does not distinguish between charges imposed only in response to a request for service and charges imposed on previously identified parcels. In this respect, the statutory definition is no different from the constitutional definition in section 2, subdivision (b), of article XIII D. But the statutory provisions implementing article XIII D, like article XIII D itself, assume that assessments are imposed only on identified parcels. Under Government Code section 53753, subdivision (b), before levying a new or increased assessment, an agency must give notice "to the record owner of each identified parcel." Government Code section 53750, subdivision (g), defines an "identified parcel" as "a parcel of real property that an agency has identified as having a special benefit conferred upon it and upon which a proposed assessment is to be imposed . . . ." Because the statutory provisions merely reflect the constitutional provisions, they do not alter our conclusion that under article XIII D an assessment is a charge imposed on previously identified parcels, and not a charge imposed only as a condition of extending service through a new service connection.

■ Arguing that a charge imposed only on property owners who voluntarily seek a governmental service or approval may properly be characterized as an assessment, plaintiffs call our attention to the Integrated Financing District

Act (Gov. Code, § 53175 et seq.), under which local agencies may establish "contingent assessments" payable only when a landowner applies for development approval. (See *id.*, § 53187.) As plaintiffs point out, the Integrated Financing District Act includes notice and majority protest provisions for owners of property subject to the contingent assessment (*id.*, § 53183). (See *Southern Pacific Pipe Lines, Inc. v. Board of Supervisors* (1992) 9 Cal.App.4th 451, 461–462 [11 Cal.Rptr.2d 745].) We agree that the District's capacity charge is similar to a contingent assessment under the Integrated Financing District Act, but this observation does not assist plaintiffs. Unlike article XIII D, the Integrated Financing District Act does not require a local agency to identify in advance the particular parcels that *will be* subject to the assessment. Instead, the notice of intention to impose a contingent assessment goes to all owners of property within the proposed assessment zone, and the assessment cannot be imposed if protested by "the owners of more than one-half of the area of the property within the proposed . . . district which is proposed to be subject to the contingent assessment immediately or in the future . . . ." (Gov. Code, § 53183, subd. (d).) Thus, under the Integrated Financing District Act, in contrast to article XIII D, all owners of property *potentially* subject to a charge are entitled to notice and a weighted vote.

Article XIII D could have been written, like the Integrated Financing District Act, to cover contingent assessments as well as assessments imposed only on previously identified parcels. But it was not written in that manner, and we remain persuaded that a capacity charge contingent on some voluntary action by the property owner is not an assessment within the meaning of article XIII D.

Plaintiffs argue that the Court of Appeal erred in characterizing the District's capacity charge as a development fee. Observing that development fees "are imposed only if a property owner elects to develop" (*Loyola Marymount University v. Los Angeles Unified School Dist.* (1996) 45 Cal.App.4th 1256, 1267 [53 Cal.Rptr.2d 424]), the Court of Appeal reasoned that the District's capacity charge, because it was imposed only in response to a property owner's voluntary decision to request a service connection, should be considered a development fee and thus exempt from the requirements of article XIII D under its section 1, subdivision (b), stating that "[n]othing in this article . . . shall be construed to . . . [a]ffect existing laws relating to the imposition of fees or charges as a condition of property development."

Plaintiffs insist that the District's capacity charge cannot be a development fee because the District has no authority to approve or disapprove property development, and because a property owner may request a new service connection without proposing any new development, such as when the owner

of a previously developed residential parcel decides to use the District's water instead of water from an existing well on the property.

We agree with plaintiffs that the District's capacity charge is not a development fee. It is similar to a development fee in being imposed only in response to a property owner's voluntary application to a public entity, but it is different in that the application may be only for a water service connection without necessarily involving any development of the property. (See *Utility Cost Management v. Indian Wells Valley Water Dist., supra,* 26 Cal.4th at p. 1191 [noting that a capacity charge "might apply regardless of whether a development project is at issue"]; *Capistrano Beach Water Dist. v. Taj Development Corp.* (1999) 72 Cal.App.4th 524, 530 [85 Cal.Rptr.2d 382] [concluding that a capacity charge is not a development fee under the Mitigation Fee Act (Gov. Code, § 66000 et seq.)].) Our agreement that the capacity charge is not a development fee does not assist plaintiffs, however, because it does not mean that the capacity charge is an assessment within the meaning of article XIII D. The capacity charge is neither an assessment nor a development fee under article XIII D.

We conclude, as did the trial court and the Court of Appeal, that the District's capacity charge is not an assessment under article XIII D.

### III. THE FIRE SUPPRESSION CHARGE

Article XIII D provides: "No fee or charge may be imposed for general governmental services including, but not limited to, police, *fire,* ambulance or library services, where the service is available to the public at large in substantially the same manner as it is to property owners." (Art. XIII D, § 6, subd. (b)(5), italics added.) At the trial below, the evidence showed that the District uses the proceeds of the fire suppression component of the connection fee to purchase equipment for its volunteer fire department, including both firefighting equipment and emergency medical equipment.[5] The fire department provides firefighting and emergency medical services to the public at large. Accordingly, the District's fire suppression charge is "imposed for general governmental services" within the meaning of section 6, subdivision (b)(5), of article XIII D, and it is prohibited by that provision if it satisfies article XIII D's definition of a "fee or charge."

[5] Government Code section 50078 authorizes "[a]ny local agency which provides fire suppression services" to "determine and levy an assessment for fire suppression services." Plaintiffs have argued that the District may not rely on this provision as authority for its fire suppression fee because Government Code section 50001 defines "local agency" to include only cities and counties. Plaintiffs have overlooked Government Code section 50078.1, subdivision (b), which defines "local agency," as used in Government Code section 50078, to include any city, county, "or special district."

Article XIII D defines a "fee" or "charge" as "any levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency upon a parcel or upon a person as an incident of property ownership, including a user fee or charge for a property-related service." (*Id.*, § 2, subd. (e).) It defines "property-related service" as "a public service having a direct relationship to property ownership." (*Id.*, § 2, subd. (h).)

The District argues that the connection fee, including its fire suppression component, does not fall within article XIII D's definition of a fee or charge because it is not imposed "upon a parcel or upon a person as an incident of property ownership." (Art. XIII D, § 2, subd. (e).) The District does not impose the fee on parcels of real property but on persons who apply for a water service connection. The District does not impose the fee on such persons "as an incident of property ownership" but instead as an incident of their voluntary decisions to request water service. If a person fails to pay the connection fee, the District does not collect it by levying upon the person's property. Rather, because the person applying for service has not satisfied a condition for extending service, the District does not make the water connection and does not provide water service.

■ We agree that a connection charge, because it is not imposed "as an incident of property ownership" (art. XIII D, § 2, subd. (e)), is not a fee or charge under article XIII D. A connection fee is not imposed simply by virtue of property ownership, but instead it is imposed as an incident of the voluntary act of the property owner in applying for a service connection. ·

Urging a different construction, plaintiffs rely on article XIII D's definition of a fee or charge as "including a user fee or charge for a property-related service." (*Id.*, § 2, subd. (e).) They argue that supplying water is a "property-related service," and, therefore, all charges for water service must be deemed to be imposed "upon a person as an incident of property ownership."

We agree that supplying water is a "property-related service" within the meaning of article XIII D's definition of a fee or charge. In the ballot pamphlet for the election at which article XIII D was adopted, the Legislative Analyst stated that "[f]ees for water, sewer, and refuse collection service probably meet the measure's definition of property-related fee." (Ballot Pamp., Gen. Elec. (Nov. 5, 1996), analysis of Prop. 218 by Legis. Analyst, p. 73.) The Legislative Analyst apparently concluded that water service has a direct relationship to property ownership, and thus is a property-related service within the meaning of article XIII D because water is indispensable to most uses of real property; because water is provided through pipes that are physically connected to the property; and because a water provider may, by recording a certificate, obtain a lien on the property for the amount of any

delinquent service charges (see Gov. Code, §§ 61621, 61621.3). But the Legislative Analyst was apparently referring to fees imposed on existing water service customers, not fees imposed as a condition of initiating water service in the first instance.

██ Several provisions of article XIII D tend to confirm the Legislative Analyst's conclusion that charges for utility services such as electricity and water should be understood as charges imposed "as an incident of property ownership." For example, subdivision (b) of section 3 provides that "fees for the provision of electrical or gas service shall not be deemed charges or fees imposed as an incident of property ownership" under article XIII D. Under the rule of construction that the expression of some things in a statute implies the exclusion of other things not expressed (*In re Bryce C.* (1995) 12 Cal.4th 226, 231 [48 Cal.Rptr.2d 120, 906 P.2d 1275]), the expression that electrical and gas service charges are not within the category of property-related fees implies that similar charges for other utility services, such as water and sewer, are property-related fees subject to the restrictions of article XIII D.

██ This implication is reinforced by subdivision (c) of article XIII D, section 6, which expressly excludes "fees or charges for sewer, water, and refuse collection services" from the voter approval requirements that article XIII D imposes on property-related fees and charges. Because article XIII D does not include similar express exemptions from the other requirements that it imposes on property-related fee and charges, the implication is strong that fees for water, sewer, and refuse collection services are subject to those other requirements. (See *Howard Jarvis Taxpayers Assn. v. City of Roseville* (2002) 97 Cal.App.4th 637, 645 [119 Cal.Rptr.2d 91] [reaching the same conclusion].)

██ Thus, we agree that water service fees, being fees for property-related services, may be fees or charges within the meaning of article XIII D. But we do not agree that *all* water service charges are necessarily subject to the restrictions that article XIII D imposes on fees and charges. Rather, we conclude that a water service fee is a fee or charge under article XIII D if, but only if, it is imposed "upon a person as an incident of property ownership." (Art. XIII D, § 2, subd. (e).) A fee for ongoing water service through an existing connection is imposed "as an incident of property ownership" because it requires nothing other than normal ownership and use of property. But a fee for making a new connection to the system is not imposed "as an incident of property ownership" because it results from the owner's voluntary decision to apply for the connection.

██ Any doubt on this point is removed by considering the requirements that article XIII D imposes on property-related fees and charges. As with assessments, article XIII D requires local government agencies to identify the

parcels affected by a property-related fee or charge. Specifically, it requires the agency to identify "[t]he parcels upon which a fee or charge is proposed for imposition." (Art. XIII D, § 6, subd. (a)(1).) As we have explained, it is impossible for the District to comply with such a requirement for connection charges, because the District cannot determine in advance which property owners will apply for water service connection. As with assessments, this impossibility of compliance strongly suggests that connection fees for new users are not subject to article XIII D's restrictions on property-related fees.

Because the connection fee, including the fire suppression charge, is not a property-related fee or charge within the meaning of article XIII D, it is not subject to article XIII D's prohibition on property-related fees or charges for general governmental services.

### IV. AMENDMENT OF AN ORDINANCE BY A RESOLUTION

Government Code section 66016, part of the Mitigation Fee Act (Gov. Code, § 66000 et seq.), provides in subdivision (b): "Any action by a local agency to levy a new fee or service charge or to approve an increase in an existing fee or service charge shall be taken only by ordinance *or resolution*." (Italics added.) We agree with the Court of Appeal that this provision authorizes the District to use a resolution to increase existing connection fees, and that this authorization applies even when the fees were initially imposed by an ordinance.

Arguing to the contrary, plaintiffs assert that the Mitigation Fee Act is procedural rather than substantive. In other words, it does not give local water districts substantive authority to impose fees, but instead it merely regulates the manner in which fees may be imposed. But whether a fee imposed by ordinance may be amended by resolution is essentially a question of procedure, not substance. Therefore, we may and do construe Government Code section 66016 as giving the District authority to use a resolution to amend a fee ordinance.

In support of their position that the District may not use a resolution to amend an ordinance imposing a connection fee, plaintiffs rely on *Cavalier Acres, Inc. v. San Simeon Acres Community Services District* (1984) 151 Cal.App.3d 798 [199 Cal.Rptr. 4] (*Cavalier Acres*), in which the Court of Appeal concluded that a community services district could impose or increase water charges only by ordinance. In reaching this conclusion, the *Cavalier Acres* Court of Appeal relied on Government Code section 61621.5 and Health and Safety Code section 5471. Relying on the rule of construction that when two statutory provisions conflict, the one that is more specific controls,

the *Cavalier Acres* Court of Appeal stated that, as applied to water charges imposed by a community services district, Government Code section 61621.5 and Health and Safety Code section 5471 were both more specific than Government Code section 66016.

Government Code section 61621.5 is part of the Community Services District Law (Gov. Code, § 61000 et seq.). As here relevant, it provides: "Except as otherwise provided in this section, a district may *by ordinance* adopt regulations binding upon all persons to govern the construction and use of its facilities and property, including regulations imposing reasonable charges for the use thereof." (Gov. Code, § 61621.5, subd. (a), italics added.) By its terms, this provision applies only to charges for the use of a community services district's *facilities*, not charges for its *services*. The Community Services District Law gives districts authority to impose charges for services, including charges for water, in a different section, Government Code section 61621. (See *Waterman Convalescent Hospital, Inc. v. Jurupa Community Services Dist.* (1996) 53 Cal.App.4th 1550, 1552–1553 [62 Cal.Rptr.2d 264].) As relevant here, it provides: "A district may prescribe, revise and collect rates or other charges for the services and facilities furnished by it . . . ." (Gov. Code, § 61621.) Nothing in this provision requires a community services district to act by ordinance rather than by resolution when, as here, it revises and prescribes the charges for water service.

Health and Safety Code section 5471 is part of article 4 ("Sanitation and Sewerage Systems") of chapter 6 ("General Provisions with Respect to Sewers") of part 3 ("Community Facilities") of division 5 ("Sanitation") of the Health and Safety Code. As relevant here, it reads: "In addition to the powers granted in the principal act, *any entity* shall have power, *by an ordinance* approved by a two-thirds vote of the members of the legislative body thereof, to prescribe, revise and collect, fees, tolls, rates, rentals, or other charges, including *water*, sewer standby or immediate availability charges, for services and facilities furnished by it, either within or without its territorial limits, in connection with its *water*, sanitation, storm drainage, or sewerage system. . . ." (Italics added.)

Health and Safety Code section 5471 does not apply to the District because it is not an "entity" within the meaning of this provision. Health and Safety Code section 5470 states that " '[e]ntity' means and includes counties, cities and counties, cities, sanitary districts, county sanitation districts, sewer maintenance districts, and other public corporations and districts authorized to acquire, construct, maintain and operate sanitary sewers and sewerage systems." The District is a public agency organized as a community services district under the Community Services District Law (Gov. Code, § 61000 et seq.) to provide water service. Nothing in the record indicates it is authorized

to construct, maintain, or operate sewers or sewerage systems. In this respect, *Cavalier Acres, supra,* 151 Cal.App.3d 798, is distinguishable because the community services district at issue there provided both water and sewer services. (See *id.* at p. 800.)

██ Moreover, even if we assume that Health and Safety Code section 5471 applies to the District, that provision, by its terms, confers authority "[i]n addition to" the authority otherwise granted to a public entity. In other words, its main purpose is to supplement rather than to limit a public agency's authority to impose charges for water or sewer services in connection with a water or sewerage system. For a public agency organized as a community services district, the "principal act" (*ibid.*) providing its authority is the Community Services District Law (Gov. Code, § 61000 et seq.). As we have seen, Government Code section 61621 authorizes community services districts to establish charges for water services without requiring that they act by ordinance rather than by resolution, and Government Code section 66016, part of the Mitigation Fee Act (Gov. Code, § 66000 et seq.), expressly authorizes districts to use either a resolution or an ordinance to impose or increase a service charge. We do not read Health and Safety Code section 5471 as limiting or abrogating that authority.

Again, we find *Cavalier Acres, supra,* 151 Cal.App.3d 798, to be distinguishable. In 1984, when the Court of Appeal decided *Cavalier Acres,* the wording of Health and Safety Code section 5471 was materially different. The introductory phrase ("In addition to the powers granted in the principal act") was not present, having been added later by amendment. (Stats. 1988, ch. 706, § 1, p. 2348.) The 1988 amendment demonstrates the Legislature's intent that Health and Safety Code section 5471 not be read as limiting the powers conferred on public entities by the laws under which they were organized.

## V. Conclusion

Before beginning to provide water service to real property through a new connection, the District requires its new customers to pay a capacity fee and a fire suppression fee. Both of these fees are used to fund capital improvements, the former to the water system and the latter to the volunteer fire department. Because these fees are imposed only on the self-selected group of water service applicants, and not on real property that the District has identified or is able to identify, and because neither fee can ever become a charge on the property itself, we conclude that neither fee is subject to the restrictions that article XIII D imposes on property assessments and property-related fees. We also conclude that the District could properly use a resolution to amend an ordinance establishing these fees.

The judgment of the Court of Appeal is reversed and the matter is remanded to that court with directions to affirm the trial court's judgment.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.