Filed 4/7/15  Designer Properties v. Ernest CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DESIGNER PROPERTIES, INC., | B256261 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC468302) |
| v. | |
| DOROTHY M. ERNEST, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michelle Rosenblatt, Judge.  Affirmed.

Lance G. Greene, APC for Defendant and Appellant.

The Ryan Law Firm, APC, Kelly F. Ryan for Plaintiff and Respondent.

Defendant Dorothy Ernest appeals the judgment entered in favor of plaintiff Designer Properties, Inc. on its complaint for quiet title based on adverse possession. On appeal, Ernest argues that Designer Properties did not meet the requirements for adverse possession because it had not satisfied a demolition lien on the property in a timely manner, and had committed both trespass and elder abuse by, among other things, entering the property without Ernest's permission and recording a lis pendens on the property. We agree with the trial court that plaintiff's late payment of the demolition lien did not invalidate its adverse possession claim, and that the evidence does not support Ernest's trespass and elder abuse claims. Consequently, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Ernest and her husband Joel owned and occupied a residence at 10622 Rhodesia Avenue in Sunland when, in 1993, fire destroyed the home. Joel Ernest perished in the fire.

After the fire, Ernest met with a contractor to discuss rebuilding the home. However, a representative of the building department told Ernest not to return to the property, and she did not do so until March 28, 2013, the day she was deposed in this action. Ernest paid no property taxes on the parcel after the fire. It was her understanding that if the county ever sold the property at a tax sale, she would receive the net proceeds of the sale. Ernest believed that in 2004, the property was worth approximately $100,000.

Sometime after the fire, the City of Los Angeles removed the remaining structure of the burnt residence, and enclosed the property by erecting a chain link fence with a gate in front.

In late 2003, William Handley, Designer Properties' business manager, learned that the property was listed for sale by the County of Los Angeles for unpaid and defaulted property taxes. Handley testified Designer Properties would often locate prospective properties to purchase through tax books of the County Assessor's Office, locate the property owners before the tax sale, and negotiate to purchase the property for

2

a low price. Handley attempted to locate Joel and Dorothy Ernest, but did not find a current address. He was able to locate Wayne Ernest, Joel's son, in Payson, Arizona, who told him that he had no interest in the property and did not know where Dorothy was, or even if she were still alive.

Designer Properties learned, through a preliminary title report, that the City of Los Angeles had placed a lien on the property in 1999 for the unpaid costs of completing the demolition of the Ernest home following the fire. Handley testified that he made efforts to pay the lien in February 2004, inquiring with the County Assessor's Office, Public Works, and the City's Building Department. He was told there was no lien. On February 28, 2004, Designer Properties paid the Los Angeles County Tax Collector $13,729.64, the full amount of the defaulted and outstanding taxes due on the property. He also submitted a change of address form, identifying Designer Properties' post office box as the mailing address for tax bills. Handley attempted to pay the city's lien at this time, but because it did not appear on the tax roll, the tax collector could not collect the money.

In late 2003 or early 2004, Christian Hickey (Hickey) and Richard Jones (Jones), who were in essentially the same business as Designer Properties and with whom Handley had had prior business dealings, also learned of the pending tax sale of the property. However, they did not pursue a purchase when they learned that the property taxes had been paid.

In 2004, after paying the outstanding taxes, Designer Properties entered the property, placed its own lock on the previously unlocked gate and commenced certain activities on the property, including repairing a portion of the chain link fence at the front of the property, repairing a wood fence above the retaining wall at the rear of the property, and storing building materials and equipment on site. In 2005, Designer Properties installed a wood fence along the approximate mid-line of the property and, since doing so, it has used the area behind this fence to store construction materials and equipment. In addition, Designer Properties performed maintenance on the property commencing in February 2004, including removing two large trees, trimming trees and

3

bushes along neighboring properties and in front of the chain link fence, and regularly cutting the grass.  Over the years, Designer Properties placed multiple locks on the gate to the property.  It also posted signs on the fence indicating that persons interested in the property should contact Designer Properties and Handley for information.  A neighbor, Luis Pena, testified that he recognized Handley and had spoken with him on a number of occasions beginning in 2004, had seen him on the property many times over the 10-year period before the trial, and confirmed that Designer Properties' signs had been posted on the property throughout that period of time.

Between 2004 and 2011, Hickey and Jones had other business interests in the neighborhood of the property, and so had occasionally driven by the property.  Both men testified that, during that period of time, they observed no signs on the property or any other indication that the property was occupied by Designer Properties.

On August 24, 2011, Designer Properties filed its complaint to quiet title.  Hickey and Jones learned of the lawsuit, informed Ernest of it, and assisted her in filing, on July 13, 2012, an answer and a cross-complaint.  The cross-complaint, which named as defendants Designer Properties, its president Bianca Torrance, and Handley, alleged that, in its activities related to the property, Designer Properties and the individual defendants had engaged in intentional and negligent misrepresentations, committed trespass and elder abuse, and violated the RICO statute.

Handley testified that in early 2012, someone began removing Designer Properties' signs and cutting its locks and replacing them.  Handley promptly replaced the signs and locks with those of Designer Properties.  In May 2012, Handley discovered that Hickey and Jones had installed a mailbox at the front of the property with "ERNEST" stenciled on it; Handley removed the mailbox.  Handley, Hickey and Jones each testified at trial that prior to this incident the property had no mailbox.

The custodian of records for the Los Angeles County Tax Collector testified that Designer Properties had timely paid the property taxes on the property for the tax years 2004 through 2009, and for the first installment of 2010.  That year's second installment was paid after the due date but before the end of the tax year.

4

At his deposition, Ernest's counsel presented Handley with a letter dated January 7, 2013 indicating that the demolition lien against the property was still outstanding. Designer Properties paid the $18,803.57 lien on June 27, 2013.

The matter was tried to the court over a period of three days. The court found in favor of Designer Properties on its adverse possession claim, and against Ernest on her cross-complaint. A judgment quieting title in Designer Properties and dismissing the cross-complaint with prejudice was entered on March 10, 2014.

Ernest timely appealed the judgment.

## DISCUSSION

1. *Designer Properties' failure to pay the demolition lien prior to filing this lawsuit did not invalidate its adverse possession claim*

Ernest maintains that the fact that Designer Properties did not pay the demolition lien until 2013 negates an element of a claim for adverse possession, to wit: timely payment of all taxes due on the property. We do not agree.

Code of Civil Procedure section 325 governs claims of adverse possession. That statute states: "(a) For the purpose of constituting an adverse possession by a person claiming title, not founded upon a written instrument, judgment, or decree, land is deemed to have been possessed and occupied in the following cases only: [¶] (1) Where it has been protected by a substantial enclosure. [¶] (2) Where it has been usually cultivated or improved. [¶] (b) In no case shall adverse possession be considered established under the provision of any section of this code, unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have timely paid all state, county, or municipal taxes that have been levied and assessed upon the land for the period of five years during which the land has been occupied and claimed. Payment of those taxes by the party or persons, their predecessors and grantors shall be established by certified records of the county tax collector."

5

Thus, to establish title to real property by way of adverse possession, the claimant must prove: (1) possession under claim of right or color of title; (2) actual, open, and notorious occupation of the premises constituting reasonable notice to the true owner; (3) possession which is adverse and hostile to the true owner; (4) continuous possession for five years; and (5) payment of all taxes assessed against the property during the five-year period. (*Mehdizadeh v. Mincer* (1996) 46 Cal.App.4th 1296, 1305.) "Fee simple title vests in the adverse possessor by operation of law at the moment the requisite conditions for adverse possession have been established for the statutory period. [Citation.] The adverse possessor is not required to take any further steps to acquire title once those conditions have been met. The statute of limitations runs against the title holder, not the adverse claimant. [Citation.] [¶][¶] California law does not require a plaintiff to bring an action to perfect his or her claim of adverse possession. Rather, it is the record owner—not the intruder—who must bring an action within five years after adverse possession commences in order to recover the property. (Code Civ. Proc., § 318.)" (*In re Marriage of Keener* (1994) 26 Cal.App.4th 186, 191; see also 6 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 16.17.)

Ernest maintains that Designer Properties did not establish its entitlement to adverse possession as it did not timely pay the demolition lien filed against the property. Designer Properties cites *Hagman v. Meher Mount Corp.* (2013) 215 Cal.App.4th 82 (*Hagman*) to argue that the demolition lien did not constitute a tax assessed against the property for purposes of Code of Civil Procedure section 325.

In *Hagman, supra,* 215 Cal.App.4th 82, this District Court of Appeal held that an unpaid mosquito abatement tax did not defeat an adverse possessor's claim because it was not a "tax" for purposes of Code of Civil Procedure section 325. Said the court: "In determining whether the mosquito assessment is a tax, we start with the generic definition. '[T]axes are imposed for revenue purposes, rather than in return for a specific benefit conferred or privilege granted. [Citations.]' [Citations.] To be sure, the Legislature and voters have adopted different definitions of 'tax' tailored to specific purposes. (*Sinclair Paint Co.* [(1997) 15 Cal.4th 866,] 874 [the term 'tax' has 'no fixed

6

meaning']; see also *Richmond v. Shasta Community Services Dist.* (2004) 32 Cal.4th 409, 421 [defining 'tax' vis-à-vis 'assessment' in determining voter enactment requirements]; *San Marcos Water Dist.* [(1986) 42 Cal.3d 154,] 160–162 [defining taxable 'fee' vis-à-vis exempt 'special assessment' for purposes of public entity's exemption from taxes]; *United Business Com. v. City of San Diego* (1979) 91 Cal.App.3d 156, 165 [defining 'tax' vis-à-vis 'fee' for purposes of determining municipality's power to levy tax].) [¶] There is no policy-driven reason to depart from this generic definition when defining the term 'taxes' under Code of Civil Procedure section 325 because the policy served by the taxation requirement in this context is a relatively weak one. An adverse possessor is required to pay taxes to put the record owner on notice of the adverse possessor's interest in the property. Notice is surely important, but the notice imparted by the payment of taxes is 'entirely insignificant' when compared to notice imparted by the adverse possessor's open and notorious possession of the land itself. (*Cavanaugh v. Jackson* (1893) 99 Cal. 672, 674.)" (*Hagman, supra,* 215 Cal.App.4th at pp. 91-92.)

Based on the foregoing analysis, the *Hagman* court concluded that the mosquito assessment at issue in that case was not a tax, as it did not raise general revenues for the county; rather, its use was limited to monitoring, abating and preventing mosquitoes. As a consequence, the plaintiff's failure to pay the mosquito assessment did not prevent the perfection of his adverse possession claim. (*Hagman, supra,* 215 Cal.App.4th at p. 92.) Designer Properties argues that, like the mosquito assessment in *Hagman*, the demolition lien filed in this case was not a tax to raise general revenues, but a means to seek reimbursement of the cost of specific benefits conferred on the property. In further support of its position, Designer Properties cites the testimony of the representative of the County Tax Collector who confirmed at trial that "[a] demolition lien is not ordinarily a tax for the purposes of [that] department."

Ernest maintains that the mosquito assessment in *Hagman* cannot be analogized to the demolition lien in this case, because Los Angeles City Administrative Code section 7.35.5.2 specifies that "(a) Upon the City Council's confirmation of a proposed lien pursuant to this Article against any property other than an owner-occupied residential

7

dwelling unit, the amount of the lien may be collected at the same time and in the same manner as property taxes are collected, as authorized by California Government Code Section 54988(a). All laws applicable to the levy, collection, and enforcement of ad valorem taxes shall be applicable to the lien." However, Ernest does not explain why an enactment which creates a procedure for collecting a lien transforms a demolition lien into a property tax assessment. And indeed, the above quoted provision is permissive: ". . . the amount of the lien *may be collected . . . .*" (Emphasis added.) Alternatively, "the responsible City Department may also record a notice of lien against the subject parcel pursuant to California Government Code Section 54988(c). The lien shall attach upon recordation in the office of the County Recorder for the County of Los Angeles and shall have the same force, priority, and effect as a judgment lien; not a tax lien." (Los Angeles Admin. Code, § 7.35.5.2.) Because the lien appeared on a preliminary title report for the property, it appears that the responsible city department chose the latter method of enforcing its lien rights. The very language of the cited code provision upon which Ernest relies makes clear that the demotion lien is to be treated like a judgment lien, and not a tax lien. This language negates Ernest's assertion that the demolition lien constituted a tax assessment against the property.

2. *Ernest failed to establish that Designer Properties had unclean hands sufficient to defeat its adverse possession claim*

Ernest also contends that Designer Properties entered the property without her permission, "diverted critical tax information from Ernest, recorded and filed a lis pendens and sued Ernest. Because of these actions Ernest asserts that Plaintiff is guilty of both Trespass and Financial Elder Abuse under Welfare and Institutions Code section 15610.30." In support of this proposition, Ernest relies on *Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102 (*Aguayo*), which held that a possessor who recorded a "wild deed," that is, one recorded outside the chain of title (*Far West Savings & Loan Assn. v. McLaughlin* (1988) 201 Cal.App.3d 67, 73) for the purpose of having the tax bills

8

diverted from the true owner had unclean hands, defeating the claim for adverse possession.

In *Aguayo*, *supra*, 213 Cal.App.4th 1102, Division Three of this District Court of Appeal considered the issue of "whether unclean hands can serve as a defense to adverse possession by claim of right and, if so, whether the trial court abused its discretion in applying the defense in this case." (*Id*. at p. 1105.) Having decided that the defense was available, the appellate court concluded that the trial court acted within its discretion in denying the adverse possessor's quiet title claim based on unclean hands. (*Ibid.*)

In that case, plaintiff Sofia Aguayo and her husband Jesus Duran Aguayo were in the business of acquiring properties by adverse possession. The property at issue had been acquired by Herman and Isabel Infante in 1946. The Infantes had raised two children in the home, Alfred and Richard. Herman died in 1969 and Isabel died intestate in 1993. (*Aguayo, supra,* 213 Cal.App.4th at p. 1105.)

After Isabel's death, the Aguayos had discussions with Alfred and Richard Infante regarding purchase of the residence, but did not consummate a sale of the property. In 1999, the Aguayos placed a "No Trespassing" sign on the property which identified Sofia as the property owner. The next year, the Aguayos recorded a "wild" quitclaim deed which purported to transfer the property from "Jesus Duran" to the Aguayos, and directed the tax collector's office to mail property tax statements to Sofia Aguayo at a post office box in Downey. Sofia then paid all tax bills due from 2000 through 2006, as well as the back taxes accrued between 1993 and 1999. (*Aguayo*, *supra*, 213 Cal.App.4th at pp. 1106-1107.)

In 2004, Sofia filed an action to quiet title to the property based on adverse possession. The special administrator of the Estate of Isabel Infante filed a cross-complaint against the Aguayos for quiet title. The matter was tried to the court, which ruled that, notwithstanding that Sofia met the statutory elements of adverse possession,

9

her act of recording a wild deed for the purpose of diverting tax bills from the true owner and to her address constituted unclean hands, defeating her equitable action. (*Aguayo v. Amaro*, *supra*, 213 Cal.App.4th at p. 1107.) The appellate court affirmed the trial court's ruling: "We hold that where, as here, a party claiming adverse possession engages in deceitful interference with the true owner's ability to defeat the claim, the trial court may in its discretion apply the defense of unclean hands." (*Aguayo*, *supra*, 213 Cal.App.4th at p. 1112.)

Ernest maintains that, like the Aguayos, Designer Properties diverted critical tax information from Ernest. However, unlike the trial court in *Aguayo*, *supra*, 213 Cal.App.4th 1102, the trial court in the instant case did not find that this conduct constituted unclean hands. That discretionary finding is supported by sound reasoning: Ernest last occupied the property in 1993 at the time of the fire, and failed to return to the property for the following 20 years, thus effectively abandoning the property. Moreover, there was no mailbox on the property until 2012, after this lawsuit was filed. Thus, it can hardly be said that Designer Properties diverted the property tax bill from Ernest. Moreover, from 1994 through 2004, Ernest's failure to receive the tax statements was not due to any conduct on the part of Designer Properties, but due to her own actions in failing to maintain and monitor a mailbox at the property, or in failing to submit a change of address to the taxing authorities. As the court noted in *Aguayo*, *supra*, 213 Cal.App.4th at page 1105, application of the defense of unclean hands to adverse possession claims is within the trial court's discretion. We hold that in this case, the trial court did not abuse its discretion in finding that Ernest failed to establish that defense.

3. *Ernest's remaining arguments*

In her brief on appeal, Ernest cites additional "legal issues" she maintains require reversal of the judgment. For example, she claims that the property taxes were in default

10

for the 2011 tax year, and that Designer Properties concealed its presence on the property and failed to establish that it occupied the property, all of which Ernest maintains defeat the claim of adverse possession.  However, each of these contentions consist of a single paragraph which simply asserts Ernest's position, but is not supported by any analysis or legal authority.[1]  We therefore deem them waived.

"It is a fundamental rule of appellate review that the judgment appealed from is presumed correct and ""'all intendments and presumptions are indulged in favor of its correctness.'"  [Citation.]'  (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610.)  An appellant must provide an argument and legal authority to support his [or her] contentions.  This burden requires more than a mere assertion that the judgment is wrong.  'Issues do not have a life of their own:  If they are not raised or supported by argument or citation to authority, [they are] . . . waived.'  (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.)  It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness.  When an appellant fails to raise a point, or asserts it but fails to support it with reasoned

---

[1]     For example, Ernest's second "legal argument" reads in its entirety as follows: "As set forth above under the Los Angeles Administrative Code the City of Los Angeles recorded a lien against the Ernest property in the amount of $18,803.57.  Because the City of Los Angeles acquired an interest in the Ernest property until it was paid off the property was immune from adverse possession under California Civil Code section 1007.  As such, Ernest again respectfully asserts that the City of Los Angeles's recorded lien/assessment was required to be paid off by Plaintiff prior to commencing adverse possession as were the 2004 property taxes."  This sequence of sentences does not constitute a legal argument, nor does the cited statute stand for the proposition for which it is cited.

argument and citations to authority, we treat the point as waived. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)" (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

DISPOSITION

The judgment is affirmed.  Respondent shall recover her costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


GOODMAN, J.[*]

We concur:


TURNER, P.J.



KRIEGLER, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.