Filed 3/20/25  Beck v. City of Canyon Lake CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RICHARD BECK, | D083322 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CVRI2202608) |
| CITY OF CANYON LAKE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Godofredo Cuison Magno, Judge.  Affirmed.

Colantuono, Highsmith & Whatley, Michael G. Colantuono, Matthew W. McAleer, and Meghan Wharton, for Defendant and Appellant.

Burke, Williams & Sorensen, and Kevin D. Siegel for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Defendant and Appellant.

Benink & Slavens, Eric J. Benink, Vincent D. Slavens, Kearney Littlefield, Thomas A. Kearney, and Prescott W. Littlefield, for Plaintiff and Respondent.

INTRODUCTION

In 2018, the voters of the City of Canyon Lake (the City) extended a utility users' tax on water and sewer services (UUT). The UUT was imposed on every person in the City using water that was transported and delivered through a pipeline distribution system. Some of the revenues from the UUT contributed to the City's general fund budget and were intended to fund police and fire services, as they had since the UUT was initially imposed in 2014.

City resident Richard Beck filed a combined petition for writ of mandate and complaint for declaratory relief challenging the UUT as violating the state constitution. The superior court granted the requested relief after it concluded the UUT violates sections 3 and 6 of article XIII D of the California Constitution.[1]

The City appeals this judgment, raising four contentions. First, the City contends the UUT is not governed by article XIII D because the City does not assess it "as an incident of property ownership." The City next contends the UUT is not a "fee or charge" governed by article XIII D and is instead a "general tax," so article XIII D, section 6's requirements do not apply. The City also contends that the UUT does not fall within article XIII D because it was imposed or assessed by voters and not "an agency." Finally, the City maintains that because the UUT was supported by a majority of taxpayers, it complies with article XIII C, which takes it outside the ambit of article XIII D and is consistent with the intent of Proposition 218, a voter initiative that added article XIII C and article XIII D to the California

---

[1]     All further references to article(s) and section(s) of article(s) are to the California Constitution.

Constitution.  (See *Howard Jarvis Taxpayers Assn. v. City of Riverside* (1999) 73 Cal.App.4th 679, 682.)

We reject the City's contentions.  We conclude the UUT falls under article XIII D because the City assesses the UUT "as an incident of property ownership," and the UUT was imposed by an agency.  We further determine the UUT is subject to the limitations detailed in article XIII D, section 6, with which the City does not demonstrate compliance.  Finally, because we find the UUT must comply with both article XIII C and article XIII D, as it is both a "general tax" and a "fee or charge," its compliance with the voter requirements of article XIII C is not sufficient alone to make the UUT constitutional.  Accordingly, we affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND[2]

The City is a predominantly residential general law city in Riverside County.  It was incorporated on December l, 1990, to become a self-governing city and ensure local control and authority over land use issues and public services such as police protection, fire and medical emergency services, and maintenance of public roads within the City.  The City provides general governmental services, including police protection (by contract with the Riverside County Sheriff's Department), 911 emergency services, municipal code enforcement, and public street maintenance.

A.  *Utility Users' Tax*

In 2014, after two failed attempts to garner enough votes to impose a special tax to fund police and fire services, the City commissioned a study of a potential utility users' tax to provide the necessary revenue.  The Canyon

---

[2]    We glean a portion of the factual and procedural background from the parties' February 10, 2023 Stipulation of Facts.

Lake City Council (City Council) passed a resolution to submit a proposed UUT (proposed Ordinance 156) as "a general tax measure imposed for general governmental purposes" to the voters, Measure DD.[3]

A majority of voters (50.79 percent) approved the measure. The City Council passed Ordinance No. 156, which added Chapter 3.26 to the Canyon Lake Municipal Code.

Chapter 3.26 imposed a 3.95 percent UUT on every person using specifically enumerated utility services, including water and sewer services. Section 3.26.090 "imposed a tax upon every person using water in the City which is transported and delivered through a pipeline distribution system . . . at a rate of 3.95% of the charges made for such water." The tax was to "be collected from the [water] service user by the water service supplier or its billing agent" and remitted to the City. Section 3.26.100 similarly imposed a UUT on every person in the City using sewer services at a rate of 3.95 percent of the charges made for such service and was also collected from the sewer service user by the sewer service supplier or its billing agent and remitted to the City. Chapter 3.26 was set to expire on December 31, 2020.

_____

[3]     Measure DD read:
        "TEMPORARY CANYON LAKE 911 EMERGENCY
            RESPONSE, LOCAL CONTROL/FISCAL
            ACCOUNTABILITY MEASURE.
        To maintain Canyon Lake as an independent City
        providing effective 911, paramedic, firefighter services;
        maintaining sheriffs deputies/staffing levels; keeping
        Canyon Lake Fire Station open; preserving local control
        over land use decisions; maintaining Railroad Canyon
        Road/other city services, shall the City of Canyon Lake
        establish a 3.95% utility users' tax for 6 years, requiring no
        increase without voter approval; annual, published
        independent audits; and no money for Sacramento."

A July 2018 staff report to the City Council reported the UUTs "comprise[d] approximately 21% [of the] City's general fund budget." The staff report also noted the largest expenditure from the general fund was police and fire services. Staff recommended the City continue collecting the UUT, using the revenues to continue maintaining life safety services. The report also noted the revenues "could be used for other general fund purposes."

On July 18, 2018, the City Council passed a resolution to place another ballot measure before the City's electorate, Measure S, to extend the UUTs beyond December 31, 2020.

Measure S passed with 76.86 percent of the vote. On December 12, 2018, the City Council adopted Ordinance No. 177, which extended the UUTs in Chapter 3.26 of the Canyon Lake Municipal Code from "the termination of Ordinance No. 156 until revised or repealed by the voters." (Canyon Lake Mun. Code, ch. 3.26, § 3.)

B. *Water and Sewer Services*

The Elsinore Valley Municipal Water District (EVMWD) provides water or sewer services throughout most of the Canyon Lake community, including to Beck. Each billing period, EVMWD issues a single bill for all water and sewer charges, fees, and taxes, including a 3.95 percent water and sewer UUT billed and collected on behalf of the City pursuant to sections 3.26.090 and 3.26.100 of the municipal code.

C. *Petition for Writ of Mandate*

In July 2022, Beck filed a combined petition for writ of mandate and complaint for declaratory relief in the superior court challenging the water and sewer UUT as unconstitutional. He argued the UUT "is imposed as an incident of property ownership and violates numerous restrictions placed on

5

property-related fees and property taxes under article XIII D of the California Constitution. ('Proposition 218')." Among other relief, Beck sought recission of the UUT and a declaration that the UUT violated article XIII D, section 3, subdivision (a), and section 6, subdivision (b)(1), (2), (3) and (5).

The trial court considered the parties' stipulated facts and written briefs, the administrative record, and supporting documents. Following a hearing, the court granted Beck's petition for writ of mandate and directed the City to rescind the portions of Ordinance No. 177 that enacted or imposed a UUT on water and/or sewer service users. The court also declared that the City's imposition of the water and sewer UUT violates the California Constitution, article XIII D, section 3 and article XIII D, section 6, subdivisions (a), (b)(1), (2), (3), and (5).

The City timely appealed.

## II.

## OVERVIEW OF CONSTITUTIONAL PROVISIONS

A. *Proposition 13*

Proposition 13 added article XIII A to the state constitution. It capped the ad valorem real property tax rate and limited annual increases in real property assessments. (Art. XIII A, §§ 1, 2.) It also limited local government authority to impose special taxes, requiring approval by two thirds of the qualified electors. (*Id.*, § 4; *Citizens for Fair REU Rates v. City of Redding* (2018) 6 Cal.5th 1, 10 (*Redding*); *Plantier v. Ramona Municipal Water Dist.* (2019) 7 Cal.5th 372, 380 (*Plantier*).) Thereafter, local governments circumvented the voter approval requirements by labeling increasing rates for services as fees, charges, or assessments rather than taxes. (See *Plantier,* at pp. 380–381; see also *Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24 Cal.4th 830, 839 (*Apartment Assn.*).)

6

B. *Proposition 218*

To close loopholes and "further curb state and local government authority to generate revenue through taxes and other exactions," California voters adopted Proposition 218 in 1996. (*Wilde v. City of Dunsmuir* (2020) 9 Cal.5th 1105, 1112 (*Wilde*).) Proposition 218 was one of three voter initiatives adopted over a span of decades "to limit the authority of state and local governments to impose taxes without voter approval. [Citation.]" (*Redding, supra*, 6 Cal.5th at p. 10.) It added article XIII C and article XIII D to the state constitution. These articles include detailed procedural and substantive requirements for imposing or increasing various types of government exactions. (*Wilde,* at p. 1112.)

Article XIII C "restricts the authority of local governments to impose taxes by, among other things, requiring voter approval of all taxes imposed by local governments." (*City of San Buenaventura v. United Water Conservation Dist.* (2017) 3 Cal.5th 1191, 1200 (*Buenaventura*).) It requires a majority vote for a "general tax," defined as "any tax imposed for general governmental purposes." (Art. XIII C, § 2, subd. (a) & § 1, subd. (a).) It requires a two-thirds vote for "special tax," which includes "a tax imposed for specific purposes, which is placed into a general fund." (Art. XIII C, § 2, subd. (d) & § 1, subd. (d).) Article XIII C also affirms voters' power to reduce or repeal local taxes, assessments, fees, and charges through the initiative process. (*Id.,* § 3.)" (*Wilde, supra*, 9 Cal.5th at pp. 1112–1113.)

Article XIII D sets forth procedural and substantive limitations on state and local government authority to impose or increase property-related taxes, assessments, fees, and charges. (Art. XIII D, §§ 3, 4, 6; *Plantier, supra*, 7 Cal.5th at p. 381.) It prohibits local governments from assessing any "tax, assessment, fee, or charge . . . upon any parcel of property or upon any person

7

as an incident of property ownership except:  [¶]  (1) [t]he ad valorem property tax imposed pursuant to Article XIII and Article XIII A[;]  [¶]  (2) [a]ny special tax receiving a two-thirds vote pursuant to Section 4 of Article XIII A[;]  [¶]  (3) [a]ssessments as provided by . . . article [XIII D][;] [and]  [¶]  (4) [f]ees or charges for property related services as provided by . . . article [XIII D]."  (Art. XIII D, § 3, subd. (a).)  However, "fees for the provision of electrical or gas service," are excluded as "charges or fees imposed as an incident of property ownership."  (*Id.*, § 3, subd. (b).)

Article XIII D, section 6 also places five substantive limitations on property-related fees:  "(1) revenues derived from the fee may not exceed the cost of providing the property-related service (*id.*, § 6, subd. (b)(1)); (2) those revenues may not be used for any purpose other than the one for which the fee was imposed (*id.*, § 6, subd. (b)(2)); (3) the amount of the fee "shall not exceed the proportional cost of the service attributable to the parcel" (*id.*, § 6, subd. (b)(3); (4) a fee may not be imposed for a service unless that service is available to the property owner (*id.*, § 6, subd. (b)(4)); and (5) a fee may not be imposed upon property owners for a general governmental service, like fire protection, if the service is available to the general public in substantially the same manner as it is to property owners (*id.*, § 6, subd. (b)(5))."  (*Plantier, supra*, 7 Cal.5th at p. 382; italics omitted.)

C.  *Proposition 26*

In 2010, the voters adopted Proposition 26, which amended article XIII C to define the term "tax" as used in article XIII C as "any levy, charge, or exaction of any kind imposed by a local government except" certain types of exactions, including "property-related fees imposed in accordance with the provisions of Article XIII D."  (Art. XIII C, § 1, subd. (e).)  Proposition 26 also imposed on local governments "the burden of proving by a preponderance of

8

the evidence that a levy, charge, or other exaction is not a tax, that the amount is no more than necessary to cover the reasonable costs of the governmental activity, and that the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity." (*Ibid.*)

III.

DISCUSSION

A. *Standard of Review*

We evaluate "the constitutionality of the taxes, fees, and assessments that local governments impose" de novo. (*Silicon Valley Taxpayers' Assn. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 449 (*Silicon Valley*).) We apply the familiar principles governing statutory construction "to 'determine and effectuate the intent of those who enacted the constitutional provision[s] at issue.' [Citation.]" (*Id.* at p. 444; *California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 933 (*Upland*).) We first look to the text of the provisions, "ascribing to words their ordinary meaning, while taking account of related provisions and the structure of the relevant . . . constitutional scheme. [Citations.]" (*Upland,* at pp. 933–934.) If the language is clear and unambiguous, the plain meaning governs. (*Silicon Valley,* at p. 448; see also *Howard Jarvis Taxpayers Ass'n v. City of San Diego* (1999) 72 Cal.App.4th 230, 235.) If a provision's intended purpose nonetheless remains opaque (*Upland,* at p. 934), "we consider extrinsic evidence in determining voter intent." (*Silicon Valley,* at pp. 445–446.)

When analyzing the relevant provisions of Proposition 218, "[o]ur primary concern is giving effect to the intended purpose of the provisions at issue. [Citation.]" (*Upland, supra*, 3 Cal.5th at p. 933.) We liberally construe Proposition 218 " 'to effectuate its purposes of limiting local

9

government revenue and enhancing taxpayer consent.' [Citations.]" (*Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 267.)

The City contends that our focus should be on the legislative intent of Proposition 218, which the City argues is to give voters the power to approve taxes on utilities to fund services cities provide. We note that while "the aim of Proposition 218 [is] to enhance taxpayer consent" (*Richmond v. Shasta Community Services District* (2004) 32 Cal.4th 409, 420 (*Richmond*)), article XIII C was added by initiative to "limit[ ] the ability of 'local governments . . . to impose, extend, or increase any general tax.' [Citation.]" (*Upland, supra*, 3 Cal.5th at p. 930.)

B. *Article XIII D, section 3*

We begin by considering whether the UUT complies with article XIII D. The language of the UUT defines it as a "tax," and the parties characterize it as a "general tax," but article XIII D does not define either term. It defines the terms "assessment" and " 'fee' or 'charge'." An "assessment" is a "levy or charge upon real property by an agency" for a benefit to the real property. (Art. XIII D, § 2, subd. (b).) "[T]he words 'fees' and 'charges' [are used] interchangeably and, usually, in combination, as 'fee or charge.' [Citation]." (*Howard Jarvis Taxpayers Assn. v. City of Fresno* (2005) 127 Cal.App.4th 914, 918 (*Fresno*); see also *Bighorn-Desert View Water Agency v. Verjil* (2006) 39 Cal.4th 205, 214, fn. 4 (*Bighorn*).) A " 'fee' or 'charge' " is "any levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency . . . upon a person as an incident of property ownership, including a user fee or charge for a property related service." (Art. XIII D, § 2, subd. (e).)

Article XIII D defines "[p]roperty-related service" as "a public service having a direct relationship to property ownership." (Art. XIII D, § 2, subd. (h).) "Property ownership" is "deemed to include tenancies of real property

10

where tenants are directly liable to pay the assessment, fee, or charge in question." (*Id.,* § 2, subd. (g).) Taken together, these terms mean that a property-related service is one that has a direct relationship to property ownership, including tenancies when the tenants are directly liable for the fees or charges.

To determine whether the UUT is a fee or charge in accordance with article XIII D, we ask whether it is imposed "upon a person as an incident of property ownership, including a user fee or charge" for "a public service having a direct relationship to property ownership," which includes "tenancies of real property where tenants are directly liable to pay the" amount in question.

The City contends the language of the UUT shows it is not imposed as an incident of property ownership because there is no reference to land ownership in the tax. The municipal code states that the tax on water service will be "collected from the service user," and the sewer users' tax is imposed "upon every person in the City using sewer services within the city," "paid by the person using such service." Because there is no explicit reference to property ownership in the code, the City compares itself to the business owners in *Apartment Assn.* to argue the taxes here, like those in *Apartment Assn.,* are not charges assessed "as an incident of property ownership."

In *Apartment Assn.,* the Supreme Court considered whether an inspection fee, which regulated rentals and was imposed on private landlords who rented out their property, violated article XIII D, section 6. (*Apartment Assn., supra,* 24 Cal.4th at p. 834.) The Supreme Court explained the language of article XIII D "applies only to exactions levied solely by virtue of property ownership." (*Ibid.*) It concluded the inspection fee was not due to land ownership; it was charged to people in their capacity as landlords. (*Id.*

11

at p. 842.)  Thus, it was not prohibited by article XIII D.  The City interprets *Apartment Assn.* as holding a fee is lawful if it was "imposed on a voluntary use of property (leasing it out for housing) and not title alone."  It compares its UUT to the inspection fee, contending that the UUT is likewise not based on title alone.

However, as subsequent caselaw makes clear, the City's interpretation of *Apartment Assn.* is too narrow.  In *Richmond*, the Supreme Court considered whether charges for new water connections are imposed "upon a person as an incident of property ownership" and concluded they are not. (*Richmond, supra*, 32 Cal.4th at pp. 426–427.)  It distinguished ongoing water service charges from one-time, start-up fees:  "A fee for ongoing water service through an existing connection is imposed 'as an incident of property ownership' because it requires nothing other than normal ownership and use of property."  (*Id.* at p. 427.)

The reasoning in *Richmond* focused on the analysis provided in Proposition 218's ballot materials and the construction of article XIII D.  It noted:  "The Legislative Analyst [who prepared materials for Proposition 218] apparently concluded that water service has a direct relationship to property ownership, and thus is a property-related service within the meaning of article XIII D because water is indispensable to most uses of real property; because water is provided through pipes that are physically connected to the property; and because a water provider may, by recording a certificate, obtain a lien on the property for the amount to any delinquent service charges. [citation.]"  (*Richmond, supra*, 32 Cal.4th at pp. 426–427.)

The court restated this reasoning in *Bighorn* before concluding that "a public water agency's charges for ongoing water delivery, which are fees and charges within the meaning of article XIII D [citation], are also fees within

12

the meaning of section 3 of article XIII C." (*Bighorn, supra*, 39 Cal.4th at p. 216.) The court also confirmed that "domestic water delivery through a pipeline is a property-related service within the meaning of [the] definition [of "fee" or "charge" in article XIII D]." (*Id.* at pp. 216–217.) And it rejected the plaintiff's argument that consumption-based water charges are not imposed " 'as an incident of property ownership' " and "instead as a result of the voluntary decisions of each water customer as to how much water to use." (*Id.* at p. 216.)

The Supreme Court has also pointed out that article XIII D, section 3, subdivision (b) supports the conclusion that charges for water utility services "should be understood as charges imposed 'as an incident of property ownership' " because "[u]nder the rule of construction that the expression of some things in a statute implies the exclusion of other things not expressed [citation], the expression that electrical and gas service charges are not within the category of property-related fees implies that similar charges for other utility services, such as water and sewer, are property-related fees subject to the restrictions of article XIII D." (*Richmond, supra*, 32 Cal.4th at p. 427.) Under the City's reading of the constitution, the exemption of gas and electric utility fees from the definitions of fees imposed as an incident of property ownership would become unnecessary surplusage. (See *Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 22 [where possible, an appellate court interprets statutory language to avoid surplusage].)

In short, consistent with the Supreme Court's holdings, we conclude that the UUT, which is " '[a] fee for ongoing water service through an existing connection[,] is imposed 'as an incident of property ownership' because it requires nothing other than normal ownership and use of property.' " (*Buenaventura, supra*, 3 Cal.5th at p. 1205.) Further, because the UUT

13

qualifies as "any levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency upon a parcel or upon a person as an incident of property ownership, including a user fee or charge for a property related service," it meets the definition of " '[f]ee' or 'charge' " in article XIII D.  (See Art. XIII D, § 2, subd. (e).)

Having concluded that the UUT imposes exactions on residents as an incident of property ownership, we consider whether article XIII D, section 3's prohibition on such exactions is permitted because the UUT falls within one of the four exceptions.  Although article XIII D does not define "taxes," section 3 provides that "[n]o tax, assessment, fee, or charge shall be assessed by any agency . . . upon any person as an incident of property ownership except" (1) the ad valorem property tax, (2) any special tax that achieves a two-thirds vote, (3) assessments as provided in article XIII D, and (4) "[f]ees or charges for property related services as provided by this article."  The City concedes that the UUT does not fall within the exception for ad valorem taxes (art. XIII D, § 3, subd. (a)(1)), and the parties agree it is not an assessment provided by article XIII D (art. XIII D, § 3, subd. (a)(3)).  They also agree that the UUT is a general tax, as defined in article XIII C:  "[T]he City Council acknowledge[s] that the [UUT] . . . would be a general tax measure imposed for general governmental purposes."  Thus, they agree that the UUT is not a special tax.  (Art. XIII D, § 3, subd. (a)(2).)  This leaves the fourth exception, which excludes from the prohibition on taxation "[f]ees or charges for property related services as provided by this article."  (Art. XIII D, § 3, subd. (a)(4).)  In other words, a fee or charge can be assessed as an incident of property ownership if the property-related service "satisf[ies] the requirements of article XIII D" (*Buenaventura, supra*, 3 Cal.5th at pp.  1202–1203), including the requirements of article XIII D, section 6.

14

The City contends that the UUT is not a " 'fee' or 'charge' " because it is a "tax," and the fourth exception thus does not apply. But the terms " 'fee' or 'charge' " and "tax" are not mutually exclusive. Although article XIII C does not expressly define " 'fee' or 'charge,' " it includes "charge" and "property-related fees" within its definition of " 'tax.' " (Art. XIII C, § 1, subd. (e).) And article XIII D defines a " 'fee' or 'charge' " as "any levy other than an ad valorem tax, a special tax, or an assessment, imposed by an agency . . . upon a person as an incident of property ownership, including a user fee or charge for a property related service." (Art. XIII D., § 2, subd. (e).) Thus, article XIII D specifies which taxes are not fees or charges. While "ad valorem tax" and "special tax" are both specified exceptions to a " 'fee' or 'charge' " in article XIII D, a "general tax" is not a specified exception. Because the exceptions in article XIII D are specified, statutory construction precludes us from inferring the existence of other, nonenumerated exceptions. (*Parmett v. Superior Court* (1989) 212 Cal.App.3d 1261, 1266 (*Parmett*) [statement of limited exceptions excludes other exceptions and judiciary has no power to add exceptions]; see also *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1412, fn. 13.) Thus, a general tax falls within article XIII D's definition of a " 'fee' or 'charge'."

We need not arrive at an exact definition of the terms "fee" and "charge" as used in article XIII C. It is sufficient to conclude that a public water agency's charges for ongoing water delivery, which are fees and charges within the meaning of article XIII D (*Richmond, supra*, 3 Cal.4th at pp. 426–427), are also fees within the meaning of section 3 of article XIII C. We conclude the UUT in this case is both a "general tax" as defined by article XIII C and a " 'fee or a charge' " as defined by article XIII D. (See *Wilde, supra*, 9 Cal.5th at p. 1116 ["There is no reason why an exaction

15

cannot be both a 'fee' under article XIII C or XIII D and a 'tax' within the meaning of article II, section 9 (or any other constitutional provision, for that matter)."].) The UUT is therefore subject to the constitutional limitations and requirements in article XIII D, and the City has no authority to exercise its discretion in a way that violates those constitutional provisions or undermines their effect. (*Silicon Valley, supra*, 44 Cal.4th at p. 448 [" 'There is a clear limitation . . . upon the power of the Legislature to regulate the exercise of a constitutional right.' "].)

C. *Article XIII D, section 6*

Article XIII D, section 6 is entitled "Property related fees and charges," and it specifies procedures and limitations applicable to the imposition or increase of "any fee or charge as defined pursuant to . . . article [XIII D]." (Art. XIII D, § 6, subd. (a) [written notice and public hearing procedures].) Specifically, article XIII D, section 6, subdivision (b), requires "[r]evenues derived from the fee or charge shall not exceed the funds required to provide the property related service"; [r]evenues derived from the fee or charge shall not be used for any purpose other than that for which the fee or charge was imposed"; "[t]he amount of a fee or charge imposed upon any parcel or person as an incident of property ownership shall not exceed the proportional cost of the service attributable to the parcel"; and "[n]o fee or charge may be imposed for general governmental services including, but not limited to, police, fire, ambulance or library services, where the service is available to the public at large in substantially the same manner as it is to property owners." (Art. XIII D, § 6, subd. (b)(1)–(3), (5).)

Section 6, subdivision (b)(5) also places the burden of proving compliance with article XIII D on the agency. In its appeal, the City does not

16

challenge the superior court's specific findings of noncompliance with section 6.

The superior court concluded the "UUT exceed[ed] the amount required to simply provide the property-related water and sewer services and is used to fund the City's general services, and, hence, used for purposes other than utility services." This finding is consistent with the court's judgment that the UUT violates article XIII D, section 6, subdivision (b)(1), (2), and (5). The City does not directly challenge these findings on appeal, and we presume the appealed judgment is correct. (*Moore v. City of Lemon Grove* (2015) 237 Cal.App.4th 363, 368–369.)

D. *An Agency Imposed and Assesses the UUT*

For the first time on appeal, the City argues article XIII D, section 3 does not apply because the voters approved Measure S to impose the UUT; no agency imposed the UUT. (See Art. XIII D, § 3, subd. (a) ["No tax, assessment, fee, or charge shall be assessed by any agency upon any parcel of property or upon any person as an incident of property ownership."].) We disagree.

An "agency" in this context is "any local government defined in subdivision (b) of Section 1 of Article XIII C." (Art. XIII D, § 2, subd. (a).) Article XIII C defines "local government" to include cities. (Art. XIII C, § 1, subd. (b).) The City contends that "agency" excludes voters, and because the UUT was supported by voters, it was imposed by voters and not an agency. Citing *Fresno, supra*, 127 Cal.App.4th 914, the City argues that when an initiative petition is submitted to a city council and the council submits it to voters, the city does not 'impose' the tax under either Proposition 13 or 218, voters do. (See also *City of Fresno v. Fresno Building Healthy Communities* (2020) 59 Cal.App.5th 220, 239.) But Measure S was not developed by voters.

17

There was no voter initiative here. Even though the voters approved the UUT, it was the City that created it, enacted it, and imposed it, and the City assessed it.

E. *City Must Comply with Both Article XIII C and Article XIII D*

The City contends that because the voters approved the UUT, as required by article XIII C, it does not have to comply with the provisions of article XIII D, section 3. We disagree.

We find *Lejins v. City of Long Beach* (2021) 72 Cal.App.5th 303 (*Lejins*) persuasive on this point. In *Lejins*, voters approved a measure that reauthorized a water and sewer rate surcharge and affirmed a historical practice of transferring revenues from the city's utilities to its general fund to maintain general city services, including police and fire services. (*Id.* at p. 311.) The city characterized the charges as a utility users' tax. (*Id.* at p. 318.) The city argued that article XIII D, section 6, subdivision (b)'s restrictions did not apply because a majority of voters approved the tax. (*Lejins,* at p. 320.)

Our colleagues in the Second District disagreed: "Article XIII D makes clear that regardless of whether the imposition is characterized as a *tax*, assessment, fee, or charge, if it is imposed upon a parcel of property or upon a person as an incident of property ownership—as we have concluded the [m]easure . . . surcharge is—it *must* satisfy one of the exceptions to the prohibition on an agency's imposition of a tax, assessment, fee, or charge upon a parcel of property or upon a person as an incident of property ownership, enumerated in article XIII D, section 3. The only exception relevant here is a fee or charge for a property-related service *that complies with the requirements of article XIII D, section 6, subdivision (b).* [Citation.] There is no exception for a *voter-approved* tax, assessment, fee, or charge

18

imposed upon a parcel of property or upon a person as an incident of property ownership that does not satisfy one of the four enumerated exceptions in article XIII D, section 3, subdivision (a)." (*Lejins, supra*, 72 Cal.App.5th at pp. 320–321.) We, too, conclude that voter approval of the UUT pursuant to article XIII C "does not rescue the City from an independent constitutional violation of article XIII D." (*Id.* at p. 321, citing *Silicon Valley, supra*, 44 Cal.4th at p. 449 ["voter consent cannot convert an unconstitutional legislative assessment into a constitutional one"].)

The City attempts to sidestep the requirements of article XIII D by focusing on the initiative power and article XIII C's voting requirements. It myopically frames the "simple question" on appeal as "do voters have authority under Proposition 218—the Right to Vote on Taxes Act—to approve a tax on the use of water and sewer services?"

The City relies on dicta in *Upland* to support its argument that the initiative power cannot be curtailed. *Upland* involved a voter initiative to permit medical marijuana dispensaries and to require each dispensary to pay an annual licensing and inspection fee. (*Upland, supra*, 3 Cal.5th 924 at pp. 931–932.) Its ultimate holding was that article XIII C, section 2's requirement that taxes be voted on in general elections only applies to local governments and not to voter initiatives. (*Upland,* at p. 943.)

The City's argument misapplies *Upland* and overlooks the express intent of section 3 to protect the initiative power used to reduce or repeal a local tax or fee. (Art. XIII C, § 3 ["the initiative power shall not be prohibited or otherwise limited in matters of reducing or repealing any local tax, assessment, fee or charge"]; see also *Bighorn, supra*, 39 Cal.4th at p. 218 ["[A]nalysis of the text of section 3 of article XIII C supports the conclusion that the initiative power granted by that section extends only to 'reducing or

19

repealing' taxes, assessments, fees, and charges."].) Article XIII C, section 3 safeguards the power to *reduce* or *repeal* taxes or fees by initiative, and Measure S did not reduce or repeal the UUT. Instead, it extended the UUT indefinitely.

As detailed above, the City also overlooks that Measure S was not the result of the initiative power. We reject the City's attempt to use this shield protecting the electorate's ability to reduce or repeal a tax or fee as a sword to carve out article XIII D's express limitations and requirements.

F. Wyatt *and* Palmer *are Unhelpful*

The City asks us not to follow the reasoning of *Lejins* and to look instead to *Palmer v. City of Anaheim* (2023) 90 Cal.App.5th 718 (*Palmer*) and *Wyatt v. City of Sacramento* (2021) 60 Cal.App.5th 373 (*Wyatt*). It argues that although these cases are distinguishable from the instant matter, *Wyatt* and *Palmer* nonetheless are more analogous than *Lejins*.

*Palmer* did not address water and sewer services. It regarded a general fund transfer surcharge that was built into electric rates. The court there did not consider whether the electric rates were imposed as an incident of property ownership, and the case did not address article XIII D at all. (*Palmer, supra*, 90 Cal.App.5th at p. 727.) As we previously articulated, compliance with article XIII C does not obviate compliance with article XIII D. Thus, *Palmer* is unhelpful.

In *Wyatt*, voters approved a city code provision that imposed a general tax on city enterprises, requiring them to pay a percent of their gross revenues from user fees and charges. (*Wyatt, supra*, 60 Cal.App.5th at p. 376.) The court there concluded the charges were not on ratepayers at all, so they were not imposed upon a parcel or on a person as an incident of property ownership. Those exactions were not *user* fees or charges for a

20

property-related services.  (*Id.* at p. 383 [the code section did not violate article XIII D, section 3 because it was not imposed on ratepayers].)  Moreover, the court there concluded that the tax imposed was a cost of providing services, so utilities could pass along the expense without violating article XIII D.  (*Wyatt,* at pp. 378, 380, 383.)  In contrast, the City has not argued here that the UUT was part of the cost of providing water and sewer services.  Indeed, the City acknowledges that the City does not set the rates on which the UUT is imposed; it is 3.95 percent above whatever the rates set by the utilities.

As we discussed above, *Lejins* squarely supports the superior court's judgment.  There, like here, voters approved a ballot measure drafted by the city to reauthorize water and sewer utility rate charges, and to authorize the transfer of the revenues from the taxes on the services to the general fund to support life safety services.  And as we previously detailed, the court there likewise concluded that such a tax violates article XIII D.  These cases do not provide us persuasive guidance for ignoring applicable requirements of article XIII D when there is voter approval under article XIII C.

G. *Amicus Arguments Extend Beyond the UUT at Issue*

In their respective briefs, amici curiae League of California Cities and California State Association of Counties (collectively, amici) and the City warn us that finding the UUT in violation of the constitution would have a significant negative impact on cities and counties because it would invalidate more than 100 utility user taxes.[4]  These statewide funding concerns fail to acknowledge that the trial court's judgment does not extend beyond the City's

---

[4]    Although we have reviewed and considered the brief filed by amici, we do not consider matters that were not before the trial court and about which there has been no request for judicial notice.  Thus, we limit our discussion to information and argument properly before us.

21

water and sewer UUTs.  Our conclusions here do not eliminate other City taxes and UUTs or other funding sources.  (See e.g., Canyon Lake Mun. Code, §§ 3.24 [real property documentary transfer tax]; 3.28 [transient occupancy tax]; 3.26.040 [telecommunications users' tax]; 3.26.050 [video users' tax]; 3.26.060 [gas users' tax]; and 3.26.070 [electricity users' tax].)  Nor do they prevent the City from seeking voter approval to impose special taxes to fund police and fire services.

DISPOSITION

The judgment is affirmed.  Respondent is awarded costs on appeal.

KELETY, J.

WE CONCUR:


DO, Acting P. J.


CASTILLO, J.

22